# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JAMES HEFTI,**

    Plaintiff,

-vs-                        Case No. 14-C-729

**BRUNK INDUSTRIES, Inc.,**

    Defendant.

## DECISION AND ORDER

James Hefti alleges that Brunk Industries interfered with, and fired him in retaliation for exercising, his rights under the Family Medical Leave Act. Brunk moves for summary judgment. For the reasons that follow, this motion is denied.

## BACKGROUND

Brunk is a Wisconsin corporation located in Lake Geneva. Brunk manufactures micro-precision component stampings, assemblies, and class-critical implantable devices for medical devices.

Starting on December 5, 2011 until he was fired on March 25, 2013, Hefti worked for Brunk as a Tool and Die Designer in a department with five or six other employees. His immediate supervisor was Paris Hay. The department manager was Rick Eisel.

Hefti was responsible for designing and detailing stamping dies, fixtures, gages and prototype tooling. Hefti would receive a work order to design a stamping die, which would be used to make a customers' part. He would then design a 3D model and create 2D drawings for the tool room to build to.

Since 2009, Brunk has granted approximately 197 FMLA leave requests to its employees. Thirty-nine Brunk employees took FMLA leave in 2013. In 2014, approximately 18% of Brunk's employees took FMLA leave of some sort. There have never been any FMLA-related lawsuits or charges filed against Brunk, other than that filed by Hefti in the instant case.

In early March, 2013, Hefti requested FMLA leave because his son was suffering from various mental health issues and he needed to arrive late or leave early to help drop off or pick up his son from school. Hefti anticipated using FMLA leave just a couple of times per week, and only for a couple of hours to take his son to or from school. When Hefti told Eisel about his son's health issues, Eisel told him that Brunk paid for Hefti's insurance and thus expected him to be at work. Later, when Hefti told Eisel that he had handed in his FMLA paperwork, Eisel appeared frustrated and aggravated.

Hefti discussed his leave request with Brunk's Human Resources Administrator, Elizabeth Weber. Weber told Hefti that his son's condition was covered under the FMLA and that Hefti needed to have his son's doctor fill out the form and then return the form to her. Hefti returned the completed form on or about March 22, 2013, three days before he was fired.

The stated reason for Hefti's firing is that his communications with co-workers were unprofessional and generally inappropriate. Eisel first noticed this issue in the summer of 2012. Hefti's co-worker, Jonathan Dykstra, complained to Eisel on numerous occasions that Hefti was agitating him. Dykstra complained that Hefti would tell co-workers what they were doing wrong using an unprofessional and degrading tone of voice, and instigate arguments with others as well. Around this time, Eisel warned Hefti to "cool down" and act more professionally when interacting with Dykstra. Hefti responded that he would never back down if he felt he was defending himself.

On July 26, 2012, Hefti sent an e-mail to Josh Shull, telling him "Get your butt in here on Sunday damn it … LOL … beaaach." Later on the same day, Hefti sent Shull another e-mail stating, "YOU BETTER AFTER

- 3 -

Case 2:14-cv-00729-RTR   Filed 09/23/15   Page 3 of 13   Document 53

WINNING THAT AWARD YAH HAY SHACKER."[1] Shull told Eisel at the time that he found these e-mails to be offensive and inappropriate.

Starting in August 2012, Thomas Roth, Brunk's Tool and Die Estimator, complained to Eisel that Hefti was aggressive and argumentative. Roth continue to raise complaints about Hefti, including an incident where Hefti used a belligerent tone when speaking to a co-worker.

On October 25, Eisel told Hefti during an e-mail exchange to put an end to his comments to co-worker Dennis Borst "before it becomes an issue." Hefti responded that he knew his comments would upset Eisel, but that Borst deserved a "shot."

On November 1, Hefti sent an e-mail that offended co-worker John Ruzicka. Eisel spoke to Hefti about the e-mail, telling him that he considered the e-mail to be inappropriate.

In Hefti's Third Quarter 2012 review, Eisel wrote that he "discussed with Jim the feedback that I have gotten from others about how his e-mails appear offensive and his personality the same. I asked him to be cognizant of this feedback and to try to keep himself approachable." Hefti acknowledged that his co-workers found him to be "difficult and

---

[1] The record does not reveal the meaning of this term. According to the Merriam-Webster online dictionary, hay*shaker* is slang for hayseed. *See also* www.legendsofamerica.com/we-slang-h.html, Western Slang & Phrases – H, "Hay Seed," Derogatory term for a farmer, also called hay shaker.

unapproachable."

On December 5, Hefti sent an e-mail to Dykstra telling him "you're my bitch." Dykstra complained about this comment to Eisel, and Hefti later admitted that the comment was inappropriate. On January 4, 2013, Hefti sent an e-mail to Eisel, referring to Shull: "If he has 1 negative thing to say about me per our conversation, I want to hear about it immediately. He had a mad [*sic*] attitude and I defended myself professionally. No more of this nonsense in my review."

On February 7, Dykstra forwarded an e-mail exchange between him and Hefti, telling Eisel "I do not know what to do with this anymore. I have tried to just ignore but it is not getting any better. Help." The next day, Hefti's wife visited him at work and Hefti introduced her to Dykstra by stating, "This is my bitch, Jon."

In February or early March, 2013, Roth told Eisel that it was becoming increasingly difficult to work with Hefti because Hefti was manipulating information between Eisel, Dykstra and Roth, and because Hefti was argumentative during meetings with co-workers. Roth also told Eisel that Hefti had a "belligerent" tone when speaking with co-workers.

Hefti's Fourth Quarter 2012 review took place on March 7, 2013, during which Hay told Hefti that he was unhappy with the level of Hefti's

sarcasm in his communications. Nonetheless, Hefti received a "3.5" out of "5" in his review, evaluating his first full year of employment. Hefti also received two "4's" out of "5" in the category of "Work Behavior."

On March 22, 2013, at 10:13 a.m., Hefti told Dykstra in an e-mail, "As an apprentice, you should really show more respect for your design elders. I can do this all day and I will get the last shot as you thru [*sic*] the first one." Dykstra immediately forwarded this e-mail to Eisel, adding "This is ridiculous." Eisel agreed. The same day, at 11:02 a.m., Hefti told Dykstra in an e-mail to "refrain from any sarcasm towards me as you do not have the mental ability to handle any sarcasm that is returned at you."

Eisel told Brunk's president, Lars Brunk about Hefti's March 22 e-mails to Dykstra. Brunk responded that Hefti should be terminated if everyone was in agreement. Eisel was worried that if something was not done about Hefti's behavior, Dykstra, a ten-year employee, would quit. Eisel also believed that he could no longer tolerate Hefti's unprofessional communication style and behavior. On March 25, 2013, Eisel recommended Hefti's termination to Nancy Finlay, Brunk's Human Resources Manager. Finlay then spoke with Mike Black, Brunk's Vice President of Finance, who gave final authorization to terminate Hefti's employment.

Eisel and Finlay held a termination meeting with Hefti, after which

- 6 -

Hefti left the building to move his vehicle closer to more easily load his personal belongings. When Hefti returned, instead of going to get his personal belongings, Hefti went into Finlay's office. Hefti was very upset and wanted to know why Brunk was not protecting him from "bullshit allegations." After this, Hefti told Finlay that she needed to get out of his way or call the police if she wanted him to leave, because otherwise he was taking his stuff and did not want anyone from Brunk touching his things. The police eventually arrived, and as he left, Hefti told Eisel, "You haven't heard the last of me!"

## ANALYSIS

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The plain language of the rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court accepts as true the evidence of the nonmovant and draws all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986).

The FMLA provides eligible employees the right to take unpaid leave for a period of up to twelve work weeks in any twelve-month period because of a serious health condition, including the serious health condition of a family member. *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741 (7th Cir. 2008). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the Act. 29 U.S.C. § 2615(a)(1). It is also unlawful to retaliate against employees who choose to exercise their FMLA rights. *King v. Preferred Tech. Group*, 166 F.3d 887, 891 (7th Cir. 1999). A claim under the FMLA for wrongful termination "can be brought under either a discrimination/retaliation or interference/entitlement theory …" *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). The difference between a retaliation theory and an interference theory is that the former requires "proof of discriminatory or retaliatory intent," while an interference theory requires only "proof that the employer denied the employee his or her entitlements under the Act." *Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 995 (7th Cir. 2010).

Hefti can survive summary judgment on his retaliation claim by presenting evidence of (1) a statutorily protected activity, (2) a materially

- 8 -

Case 2:14-cv-00729-RTR   Filed 09/23/15   Page 8 of 13   Document 53

adverse action taken by Brunk, and (3) a causal connection between the two. *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 824 (7th Cir. 2011). This is the so-called "direct" method of proof, under which a plaintiff can prevail by showing an admission of discrimination or by constructing a "convincing mosaic" of circumstantial evidence that allows a jury to infer intentional discrimination by the decision maker. *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 771 (7th Cir. 2008). Hefti chooses the mosaic route. Such evidence can include (1) suspicious timing, ambiguous statements, verbal or written, and other bits and pieces from which an inference of retaliatory intent might be drawn; (2) evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently; and (3) evidence that the employer offered a pretextual reason for an adverse employment action. *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). "Each type of evidence is sufficient by itself (depending of course on its strength in relation to whatever other evidence is in the case) to support a judgment for the plaintiff; or they can be used together." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994).

Hefti argues that the timing of his firing was suspicious because it came two weeks after he requested FMLA paperwork and three days (one work-day) after he submitted the form. Suspicious timing, standing alone,

is "rarely sufficient" to "create a triable issue." *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008). Hefti's claim, however, is supported by more than just suspicious timing. Hefti's manager, Rick Eisel, was outwardly disappointed when Hefti explained that he needed to take leave. In fact, it is undisputed that Eisel told Hefti that he was expected to work because Brunk pays for his insurance. This statement strongly suggests discriminatory intent because under the FMLA, an employee is "entitled to have health benefits maintained while on leave as if the employee had continued to work instead of taking the leave." 29 C.F.R. § 825.100(b); 29 U.S.C. § 2614(c)(1). In other words, Eisel's statement suggests a causal link between Hefti's protected activity, requesting FMLA leave, and Hefti's termination because Eisel did not think that Brunk should have to continue paying for Hefti's health coverage if he wasn't working. Eisel was also visibly perturbed when Hefti followed through and submitted his FMLA paperwork. If Hefti was really on the road to being fired, it seems odd that Eisel would be upset about Hefti taking time away from work. On the contrary, it seems that Eisel would welcome the respite from a belligerent employee. Thus, the inference can be drawn that the stated reason for Hefti's termination was a pretext for discrimination.

Brunk argues, as noted, that Hefti was fired because of

inappropriate and unprofessional interactions with his co-workers. Moreover, Brunk was generally receptive to FMLA leave requests, and Brunk has never been sued under the FMLA prior to this lawsuit. *Hurst v. Ball Memorial Hosp., Inc.*, No. 1:05-cv-877-JDT-TAB, 2007 WL 1655794, at *6 (S.D. Ind. June 1, 2007) (granting summary judgment on timing-based retaliation claim because "utilizing FMLA leave was relatively common" on the plaintiff's unit). Even so, the Court is required to draw all reasonable inferences in favor of Hefti at this stage of the proceedings. Eisel's interactions with Hefti create an issue of fact as to whether Hefti was fired for taking FMLA leave.

The record does reflect, of course, that Hefti had been admonished for his behavior long before he requested FMLA leave. This might suggest, as Brunk argues, that the timing of Hefti's firing in relation to his FMLA request was a mere coincidence. On the other hand, it begs the question as to why it took so long to fire Hefti in the first place. In this respect, it is worth noting that Hefti was never warned that he could be fired if he didn't cool it on his combative co-worker interactions. In fact, in his last performance review, just two weeks before he was fired, Hefti received two "4's" out of "5" in the "Work Behavior" category, which measures "establishing and maintaining effective relations" and "displaying positive

- 11 -

Case 2:14-cv-00729-RTR   Filed 09/23/15   Page 11 of 13   Document 53

outlook and pleasant manner." Plaintiff's Proposed Findings of Fact, ¶ 9. Thus, Brunk has not presented "unrebutted evidence" that it "would have taken the adverse employment action against the plaintiff" even if Brunk "had had no retaliatory motive." *Ridings*, 537 F.3d at 771.

Hefti's interference claim also survives summary judgment. To establish such a claim, Hefti must show that (1) he was eligible for the FMLA's protections; (2) Brunk was covered by the FMLA; (3) Hefti was entitled to take leave under the FMLA; (4) Hefti provided sufficient notice of his intent to take leave; and (5) Brunk denied Hefti FMLA benefits to which he was entitled. *Goelzer*, 604 F.3d at 993. The only disputed issue on this claim is whether Brunk would have fired Hefti in the absence of an FMLA request. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 636 (7th Cir. 2009) ("an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights") (quoting *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005)). For the reasons already stated, this is an issue that must be submitted to a trier of fact.

NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

1. Brunk's motion for summary judgment [ECF No. 28] is **DENIED**;

2. Motions in limine are due by **October 30, 2015**. Responses are due **November 6**.

Dated at Milwaukee, Wisconsin, this 23rd day of September, 2015.

BY THE COURT:

*[signature: Rudolph T. Randa]*

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**